The document below is hereby signed.

Signed: December 16, 2009.



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| WILLIAM HAYMORE BRAMMER, | ) | Case No. 09-00608 |
| JR., and HEILI KIM, | ) | (Chapter 13) |
| | ) | **For Publication in West's** |
| Debtors. | ) | **Bankruptcy Reporter** |

MEMORANDUM DECISION AND ORDER RE TRUSTEE'S
MOTION TO DISMISS WITH PREJUDICE BASED ON 11
U.S.C. § 101(30) AND § 109(e) INELIGIBILITY AND BAD
FAITH AND NOTICE OF DEADLINE AND OPPORTUNITY TO OBJECT

This addresses the trustee's Motion to Dismiss with Prejudice Based on 11 U.S.C. § 101(30) and § 109(e) Ineligibility and Bad Faith.  For the reasons set forth below, I will deny the motion to the extent it seeks dismissal based on § 109(e) debt limitation grounds.

I

The facts underlying the trustee's Motion to Dismiss and relevant to this Memorandum Decision are as follows.  On July 13, 2009, the debtors in this case filed for relief under chapter 13 of the Bankruptcy Code.  In their schedules, as amended, the debtors disclose no unsecured claims and secured claims of $219,647.48, secured by collateral valued at $752,500.

Notwithstanding the debtors' schedules, Aurora Loan Services, Inc. filed a proof of claim in the case of $1,019,830.48 secured by the debtors' principal residence, to which the debtors have filed an objection.  Although not included on the debtors' schedule D, this amount is, curiously, reflected in their summary of schedules.  Assuming the proof of claim is valid, this brings the debtors' total lien claims to $1,047,830.48.

II

In her motion, the trustee raises multiple grounds for dismissal.  I will limit this decision, however, to determining whether grounds exist for dismissing the case based on ineligibility under § 109(e)'s debt limitation provision.

Section 109(e) of the Bankruptcy Code provides that:

> Only . . . an individual with regular income and such individual's spouse . . . that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $336,900 and non-contingent, liquidated, secured debts of less than $1,010,650 may be a debtor under chapter 13 of this title.

In her motion, the trustee argues that because the debtors' secured debts exceed $1,010,650, they are ineligible under § 109(e) to file for relief under chapter 13 and must instead convert to chapter 11.  To arrive at this result, however, the trustee must first get past § 506(a), which mandates that the court bifurcate lien claims into secured and unsecured claims to

the extent the amount of the claim exceeds the value of the collateral in determining the amount of allowed secured claims in a case.  If § 506(a) applies, the debtors have secured claims totaling $752,500 (the scheduled value of the debtor's house and car) and unsecured claims of $295,330.45, qualifying them under § 109(e) for relief under chapter 13.

In her motion, the trustee argues that § 1322(b)(2) prevents the debtors from using § 506(a) to bifurcate Aurora Loan Services' claim secured by their home for purposes of determining eligibility under § 109(e).  Section 1322(b)(2), in part, limits the ability of a debtor to modify through a chapter 13 plan the rights of a holder of a claim that is secured only by the debtor's principal residence.  In operation, it stops a debtor from bifurcating a claim on their home and stripping off the unsecured portion of the claim for different treatment under the plan.  Because, however, the antimodification clause of § 1322(b)(2) does not extend to determining eligibility for purposes of § 109(e), the trustee's argument is without merit.

A.

This conclusion is justified, first, by the apparent rationale behind the § 109(e) limit on unsecured debts.  In general, if a debtor has unsecured debt (as measured by § 506(a)) in excess of $336,900, § 109(e) makes such debtor ineligible to

3

reorganize under the simplified procedures of chapter 13, and the debtor must instead reorganize under the more complicated procedures of chapter 11.  *See Brown & Co. Secs. Corp. v. Balbus (In re Balbus)*, 933 F.2d 246 (4th Cir. 1991).  The rationale of § 109(e) appears to be that when unsecured debts exceed the specified debt limit, the holders of unsecured claims ought to enjoy the protections of chapter 11 (if the debtor is to reorganize), including the issuance of a disclosure statement and the right of each holder to vote on confirmation of a plan if the plan impairs its class of claims.

   Nothing in § 1322(b)(2) warrants abandoning that rationale and jettisoning § 506(a) in the determination of the amount of unsecured claims for purposes of § 109(e).  When some of those unsecured debts arising from the application of § 506(a) in making the eligibility determination under § 109(e) are attributable to the undersecured portion of a claim secured by a security interest on the debtor's principal residence, the holders of unsecured claims still ought to enjoy the same protections of chapter 11 if the unsecured claims (determined by applying § 506(a)) exceed the § 109(e) unsecured debt limit.

   This demonstrably is true because the debtor's principal residence might be sold at a postpetition foreclosure sale.  The resulting deficiency claim would be an unsecured claim notwithstanding § 1322(b)(2) (if the case were allowed to proceed

4

in chapter 13) and notwithstanding § 1123(b)(5) (if the case were to be converted to chapter 11). If that deficiency claim and the other unsecured claims exceed the debt limit amount for unsecured claims under § 109(e), those claims ought to enjoy the protections of chapter 11, and according them those protections cannot await the passing of time to see if a foreclosure actually results. A § 109(e) eligibility determination is based on measuring debts as of the filing of the petition when it cannot be known whether a foreclosure will result.

Extending the reach of § 1322(b)(2) to prevent the application of § 506(a) to eligibility determinations under § 109(e), as the trustee urges, would limit the protections that § 109(e) is meant to provide to unsecured claims, including both the undersecured portion of a claim secured by a debtor's principal residence and other unsecured claims. This is an extension of § 1322(b)(2) that neither the language of that provision nor the policy underlying § 109(e) will allow.

B.

Notwithstanding the foregoing, the trustee cites to several cases in support of her argument that § 1322(b)(2) does not allow bifurcation of a claim secured by a debtor's principal residence for purposes of determining eligibility under § 109(e). None of the cases on which the trustee relies are persuasive on this

5

point.

First, the trustee cites *Nobelman v. American Savings Bank*, 113 S. Ct. 2106 (1993).  In *Nobelman*, the Supreme Court addressed the issue of whether, despite § 1322(b)(2), a chapter 13 debtor could bifurcate a claim secured only by a lien on the debtor's home, thereby allowing for different treatment under a plan as to the unsecured portion of the claim.  In answering that question in the negative, the Court stated that "[t]he portion of the bank's claim that exceeds $23,500 [(the value of the collateral)] is an unsecured claim component under § 506(a)."  *Id.* at 2110 (citing *United States v. Ron Pair Enterprises*, 489 U.S. 235, 239 n.3 (1989)).  This statement by the Court undermines the trustee position and indicates that § 506(a) should apply under § 109(e).  Moreover, although the Court decided that § 1322(b)(2) prevented the debtor from bifurcating the claim secured by the debtor's home for plan purposes, it only did so because allowing bifurcation and different treatment of the unsecured portion of the claim pursuant to a plan would necessarily result in a modification of the terms of the mortgage, *Id.* at 2111, which is what § 1322(b)(2) expressly prohibits.  Consequently, § 1322(b)(2) only prevents the operation of § 506(a) in the limited circumstance of when it could work a modification through a plan of the rights of a holder of a claim secured in part by a lien on a debtor's principal residence.  Nothing in *Nobelman*

6

stands for the proposition that § 1322(b)(2) prevents the operation of § 506(a) in other contexts, including eligibility determinations under § 109(e). To the contrary, the language quoted above indicates that § 1332(b)(2) only functions to limit the reach of § 506(a) in the context of a plan.

Furthermore, two cases on which the trustee relies do not even reach the issue before me today. First, in *In re Prosper*, 168 B.R. 274 (Bankr. D. Conn. 1994), the court expressly declined to reach the issue because it was not properly before the court. *Id.* at 280. Likewise, in *Soderlund v. Cohen*, 236 B.R. 271 (9th Cir. B.A.P. 1999), although the court opined that a different question might be presented if the debt in question were entitled to the protections of § 1322(b)(2), the panel did not address the issue because the claims were not secured by an interest in the debtor's principal residence. *Id.* at 275 n.5.

The only case the trustee cites that reaches the issue and agrees with her analysis is *In re Smith*, 2009 WL 4048015 (Bankr. C.D. Cal. Oct. 9, 2009). In making the determination that § 506(a) should not apply in determining eligibility under 109(e) when dealing with an undersecured claim secured by a lien on a debtor's principal residence, the court in *Smith* concluded that:

> In order to avoid treating a lien one way for confirmation and another for eligibility, and to treat the partially secured senior trust deeds consistent with *Nobelman* and *Zimmer,* [313 F.3d 1220 (9th Cir. 2002)], any lien which is partially secured on debtor's primary residence will be treated as a secured debt for § 109(e)

purposes as well.

Nothing in the *Smith* decision, however, does anything to address my concerns about the protections § 109(e) is intended to afford unsecured creditors and my concern that *Nobelman* mandates applying § 506(a) to determine the extent to which a claim is secured, regardless of whether § 1322(b)(2) bars modification of the rights of a holder of a claim that is only partially secured by the primary residence.[1]  Accordingly, I find *Smith* unpersuasive.

III

For the foregoing reasons it is hereby

ORDERED that the trustee's Motion to Dismiss with Prejudice Based on 11 U.S.C. § 101(30) and § 109(e) Ineligibility and Bad Faith is DENIED to the extent the motion seeks dismissal based on ineligibility under § 109(e)'s debt limitation provision.

[Signed and dated above.]

Copies to: Debtor; Debtor's attorney; Chapter 13 Trustee.

---

[1] The *Zimmer* decision cited in *Smith* dealt with a wholly unsecured claim on the debtor's principal residence and acknowledged the Supreme Court's holding in *Nobelman* that applying § 506(a) is the first step in determining the extent to which the creditor is a holder of a secured claim entitled to the protections of § 1322(b)(2).  *Zimmer*, 313 F.3d at 1226-27. Accordingly, *Zimmer* supports my view of this issue.